Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 670 | **DATE** | 6/13/2002 |
| **CASE TITLE** | Kronos Products, Inc. vs. Sasib Bakery North America, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 7/2/2002 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendant's motion (Doc 41-1) for summary judgment is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 1 4 2002 | 57 |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | 02 JUN 13 PM 4:42 | | |
| | SCT — courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | mailing deputy initials |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KRONOS PRODUCTS, INC., )
)
Plaintiff/Counter-Defendant, )
)
vs. ) 00 C 670
)
SASIB BAKERY NORTH AMERICA, INC., )
)
Defendant/Counter-Plaintiff. )

**MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on a motion for summary judgment by Defendant Sasib Bakery North America ("Sasib"). For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**

Plaintiff Kronos Products, Inc. ("Kronos") is a baking and food product company located in Chicago, Illinois. Sasib is a manufacturer of commercial baking equipment whose principal place of business is in Plano, Texas. In 1997, Kronos and Sasib began negotiating a contract for a custom-designed oven and production line that would allow Kronos to produce pita bread 7 inches in diameter for a large commercial account. To fulfill the customer's needs, Kronos had to be able to produce a minimum of 25,000 pitas per hour of production. Sasib convinced Kronos that their equipment would allow Kronos to produce the pita breads in the desired quantities.

57

The oven and production line were to be separately manufactured by different divisions of Sasib and then assembled into an integrated system at Kronos's Chicago plant. Because of the separate fabrication, the agreements as to the two components were memorialized in two separate contracts. Both incorporated several pages of boilerplate language entitled "General Terms and Conditions" after laying out the specifications that applied individually to the particular piece of equipment. The contracts both provided that Kronos would pay 90% of the contract price before installation and the remaining 10% at final commissioning or 60 days after arrival at the dock for the production line and upon acceptance of installation or 60 days from the date of shipment for the oven.

Shortly after the final products were installed at the Chicago facility, Kronos began to experience problems with the system. The parties disagree on the exact extent of the difficulties Kronos encountered, but there is no dispute that Sasib was required to replace or modify several parts soon after the oven and line were installed. According to Kronos, the equipment never produced 25,000 pitas of acceptable quality per hour; the shape of the finished product was compromised at that level of production, and oftentimes the pitas did not bake evenly or brown properly. In an attempt to remedy the latter issue, Sasib employees advised Kronos to increase the baking temperature from 600°F to 800°F. The added heat severely damaged several parts of the oven.

Ten months after the first use of the equipment, Kronos advised Sasib that the final 10% payment would not be made until Sasib made the equipment produce acceptable quantities of marketable pitas. Sasib made no further repairs or modifications, and Kronos filed suit, alleging breach of contract, breach of warranty, negligence, and a claim under the Illinois Consumer Fraud Act. In response, Sasib filed a counterclaim for the outstanding 10% of the contract price. Sasib now moves for partial summary judgment of certain issues raised by the complaint as well as complete summary judgment of their counterclaim.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986). The burden then shifts to the nonmoving party to show through specific evidence that a triable issue of fact remains on issues on which the nonmovant bears the burden of proof at trial. Id. The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence. Id. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Bay v. Cassens Transport Co., 212 F.3d 969, 972 (7th

Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir. 2000); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## DISCUSSION

### Choice of Law

Sasib first seeks summary judgment of the enforceability of the contractual choice of Texas law. Following the analysis set forth in § 187 of the Restatement (Second) of Conflict of Laws, Illinois courts recognize and enforce choice-of-law provisions unless the state chosen does not have a substantial relationship to the parties or the transaction and the choice has no other reasonable basis or the application of the chosen law would undermine a fundamental policy of another state with a materially greater interest in the underlying dispute. Newell Co. v. Petersen, 758 N.E.2d 903, 922 (Ill. App. Ct. 2001). Kronos makes no contention that application of Texas laws would undermine Illinois public policy. Instead, they focus their attack only on whether Texas has a substantial relationship to the parties or the transaction. Their arguments are unconvincing; not only was Texas the state to which payments were sent and the location of many of the persons with whom Kronos had dealings in the course of the transaction, it was also Sasib's principal place of business at the time of the negotiations, the formation of the contract, and the parties' performance. As such, Texas bore a strong and substantial relationship to Sasib and the transaction, and the

contractual choice of Texas law is valid and enforceable here. See Int'l Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Illinois, 568 N.E.2d 9, 13-15 (Ill. App. Ct. 1990).

**Products Other Than 7-Inch Pitas**

Sasib's next ground for summary judgment revolves around their contention that Kronos is limited to seeking damages for the inability of the equipment to produce the required amount of 7-inch pitas per hour. Kronos argues that the contract reference to 7-inch pitas simply established a relative standard that could then be adjusted for any bread product Kronos chose to manufacture with the equipment, thus allowing them to seek damages for any underperformance of the equipment with regard to products of other shapes or sizes. They point to several places within the contract that pertain to the adjustability of certain components of the line and urge that they necessitate the conclusion that Kronos could bake whatever it wanted to with the equipment, and Sasib is liable for any inability or underability of the equipment to do so. Their interpretation is too sweeping, and it is inconsistent with the express specifications of weight, capacity, and diameter given at the outset of the production line contract. In addition, there is nothing inconsistent about a fixed-size bread product and adjustable thickness of machine parts; at some point in the process, the dough must rise, and if the machine cannot accommodate different thicknesses, the product would be ruined in during the baking process. As such, we conclude that the contract contemplated only the production of 7-inch pitas with the baking equipment, and Kronos is correspondingly

limited to seeking damages only with regard to the system's ability to produce the allotted number of 7-inch pitas per hour.

**Allowable Remedies**

The next challenge Sasib mounts to Kronos's cause of action centers around the availability of certain remedies. Kronos contends that the guarantee given in the production line contract is an express warranty that the equipment would produce a minimum of 25,000 pitas of acceptable quality per hour for 12 months after the system was installed. In their view, this guarantee provides protection above and beyond that given in the warranty included in the General Terms and Conditions, which covers only material and workmanship.

Sasib insists that the guarantee is merely a reiteration of the protections given in the general warranty, but to give the section that construction would make it superfluous. Their interpretation would mean that the guarantee within the order confirmation merely restates what the warranty in the general conditions already lay out–that material and workmanship on the production line are guaranteed for one year. This construction would render the express guarantee meaningless, an unacceptable result. Kelly-Coppedge v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998). We therefore reject Sasib's proffered interpretation of the effect of the guarantee.

Kronos admits, as they must, that the contract contains a limitation of liability that states "Notwithstanding anything in the Contract to the contrary, whether such liability is a result of a breach of contract, a breach of warranty, or otherwise, Seller's

liability is exclusively limited to the repair or replacement, at its sole option and within a reasonable time and delivery schedule, of defective or nonconforming Seller Equipment, and in no event shall Seller be liable to Purchaser for any punitive, incidental or consequential damages (as defined in section 2-715 of the Uniform Commercial Code), including but not limited to, damages resulting from injury to the Equipment, or from loss of use of the Equipment or other assets of Purchaser, loss of time or loss of profits or income." However, they argue that the remedy specified in the contract fails of its essential purpose because Sasib, despite numerous attempts to repair and modify the equipment to address defects, was not able to make the oven and line conform to the performance criteria specified within the contract. They contend that the machinery, even if it was completely repaired or replaced, would never perform its intended function, and the repair or replacement remedy is therefore meaningless. They point to Tex. Bus. & Comm. Code § 2.719(b) to support their assertion that under these circumstances, an exclusive remedy gives way to allow an aggrieved party to seek any of the host of other relief that would otherwise be available.

It is true that a failure of the essential purpose of an exclusive remedy can render void a limitation of liability. See, e.g., Metro Nat'l Corp. v. Dunham-Bush, Inc., 984 F. Supp. 538, 560 (S.D. Tex. 1997); Nation Enterprises, Inc. v. Enersyst, Inc., 749 F. Supp. 1506, 1514 (N.D. Ill. 1990) (interpreting Texas law). Kronos argues that a failure of the essential purpose of the exclusive remedy necessarily negates the waiver in the next sentence. Some support exists for this argument, especially in cases involving

consumer transactions between parties with unequal bargaining power. See, e.g., Cooley v. Big Horn Harvestore Systems, Inc., 813 P.2d 736, 747-48 (Colo. 1991); Fiorito Bros. Inc. v. Fruehauf Corp., 747 F.2d 1309, 1314 (9th Cir. 1984) (construing Washington law); Murray v. Holiday Rambler, 265 N.W.2d 513, 526 (Wis. 1978). There is also authority for the contrary position, particularly in cases involving commercial transactions between sophisticated parties. The view expressed is that a waiver of consequential or other damages operates independently of a limitation of remedies. See, e.g., Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, 746 N.E.2d 941, 947-52 (Ind. 2001); Laidlaw Transp. Inc. v. Helena Chemical, 680 N.Y.S.2d 365, 367 (N.Y. App. Div. 1998); Schurtz v. BMW of N. Am., 814 P.2d 1108, 1112-14 (Utah 1991); Canal Elec. Co. v. Westinghouse Elec. Corp., 548 N.E.2d 182, 184-85 (Mass. 1990); Kearney & Trecker Corp. v. Master Engraving Co., 527 A.2d 429, 437 (N.J. 1987); Johnson v. John Deere Co., 306 N.W.2d 231, 238 (S. Dak. 1981).

In light of the allegations by Kronos that the specific and essential object of the contract was never achieved, that is, the oven and line failed to produce pita bread 7 inches in diameter at the minimum rate of 25,000 pitas per hour of production specified within the oven contract, coupled with Sasib's failure to make adequate repairs or modifications to permit the essential object of the contract to be achieved, failure of the essential purpose of an exclusive remedy voids a limitation of liability.

In other words, Kronos claims it would be deprived entirely of the bargained-for performance by Sasib under the contract both in the first instance and their later failure

to supply the remedy that Sasib promised if the original line failed. With no remedy whatsoever for both the initial breach and the failure to cure the breach, Kronos is left with nothing. Consequently, we decline to hold that the contractual waiver of punitive, consequential, and incidental damages is enforceable at this stage of the case.

**Tort-Based Claims**

Sasib further contends that the portions of Kronos's complaint that are based in negligence, specifically Count V, are not actionable because the loss they suffered as well as the nature of their injury sounds in contract, not tort. In <u>Southwestern Bell Telephone Co. v. DeLanney</u>, the Texas Supreme Court confirmed that if the duty underlying a claim of negligence arises solely from a contractual relationship, an aggrieved party's only course of action is a claim for breach of contract, not a tort action. 809 S.W.2d at 494-95. Although the rule is often stated in terms of an injury separate from those suffered under the contract, the Court has emphasized that the nature of the duty is the proper focus of inquiry. <u>Formosa Plastics Corp. v. Presidio Engineers and Contractors, Inc.</u>, 960 S.W.2d 41, 46 (1998) (allowing a fraudulent inducement claim to survive in a breach of contract action because the duty to refrain from fraud arose from Texas common law, not parties' contract). In cases where the facts supporting the tort and contract claims are identical and the losses sought for both claims revolve around recovery of the expected benefit of the bargain, the claim sounds only in contract and the analysis set forth in <u>DeLanney</u> controls. <u>Facciolla v. Linbeck Constr. Corp.</u>, 968 S.W.2d 435, 448-49 (Tex. App. 1998). In this case, the duties upon

which Kronos rests its allegations of negligence spring directly from the contract, and the losses they seek are indistinguishable from those sought under their breach of contract and breach of warranty counts. As such, the negligence claims cannot stand, and Kronos is limited to seeking relief through their breach of contract and warranty actions.

**Voiding of Warranties**

With respect to Kronos's claims for breach of warranty, Sasib argues that all warranties were voided by Kronos's failure to pay the final 10% of the purchase price when it became due. They ignore the fact, however, that the requirement of lack of default is included only with respect to the warranties given in the General Terms and Conditions sections of the two contracts. The five prerequisites listed for those warranties are not given in connection with the guarantee in the production line contract. A question of fact therefore arises as to the effect, if any, of Kronos's failure to pay the full purchase price at the specified time upon any warranty created by the language of the guarantee. Accordingly, Sasib's argument that Kronos's actions voided any warranty available under the contracts fails and summary judgment of that issue is denied.

**ICFA Claim**

Count VI of Kronos's complaint contains a claim based on the Illinois Consumer Fraud Act ("ICFA"). Sasib moves for summary judgment on this count, arguing that the choice of Texas law to govern and control the contract in all respects prevents

Kronos from bringing a claim rooted solely in an Illinois statute. However, several courts have held that a contractual choice of law bars actions brought under another state's law unless it can be shown that the choice of law is otherwise invalid. See Potomac Leasing Co. v. Chuck's Pub, Inc., 509 N.E.2d 751, 759 (Ill. App. Ct. 1987) (eliminating ICFA claim in the face of a valid contractual provision choosing Michigan law); see also, e.g., Janice Doty Unlimited, Inc. v. Stoecker, 697 F. Supp. 1016, 1019-20 (N.D. Ill. 1988) (dismissing ICFA claim where contract specified it would be governed by Georgia law). Kronos contends that the claim survives because it is based on representations that took place before the contract was formed and thus could not have arisen "under the contract." However, this position was directly addressed and rejected by the court in Janice Doty. 697 F. Supp. at 1020, citing Hofeld v. Nationwide Life Ins., 322 N.E.2d 454 (Ill. 1975). Accordingly, the contractual choice of Texas law bars the claim under the ICFA in Count VI, and Sasib is entitled to summary judgment of that count.

**Sasib's Counterclaim**

Finally, Sasib moves for summary judgment of their counterclaim for the outstanding 10% of the contract price. Kronos claims that their obligation to pay the final installment was eliminated by Sasib's alleged breach of their contractual duties. Because questions of material fact exist as to claimed breaches of the contract by Sasib, along with what appropriate remedies may exist should such breaches be proven, it is

not appropriate to grant summary judgment to Sasib with respect to its counterclaim for the outstanding 10% of the contract price. That motion is accordingly denied.

## CONCLUSION

Based on the foregoing analysis, Sasib's motion for summary judgment is denied in part and granted in part.

Charles P. Kocoras
United States District Judge

Dated: June 13, 2002